# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DANIEL D.,

Plaintiff,

v.

FRANK BISIGNANO, Acting
Commissioner of Social Security,

Defendant.

Case No.: 25-cv-00036-JLB

**ORDER GRANTING PLAINTIFF'S MERITS BRIEF**

**[ECF No. 16]**

On January 7, 2025, plaintiff Daniel D. ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income ("SSI") benefits.  (ECF No. 1.)  On March 10, 2025, the Commissioner filed the Administrative Record.  (ECF No. 10.)

Before the Court and ready for decision is Plaintiff's merits brief.  (ECF No. 16.)  The Commissioner filed an opposition (ECF No. 17), and Plaintiff filed a reply (ECF No. 18).  For the reasons set forth herein, the Court **GRANTS** Plaintiff's merits brief, reverses

the decision of the Commissioner, and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    PROCEDURAL BACKGROUND

On or about June 25, 2021, Plaintiff filed an application for SSI under Title XVI of the Social Security Act, alleging disability beginning January 1, 2005.  (Certified Administrative Record ["AR"], at 22, 268–90.)  After his application was denied initially and upon reconsideration (AR 140–44, 164–69), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ") (AR 170–87).  An administrative hearing was held on February 15, 2024.  (AR 41–66.)  Plaintiff appeared at the hearing with a non-attorney representative, and testimony was taken from him, as well as from a vocational expert ("VE").  (AR 41–66.)

As reflected in his April 17, 2024, hearing decision, the ALJ found that Plaintiff would not be disabled if he stopped his substance abuse, and therefore, Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the application date through the date of decision.  (AR 19–40.)  The ALJ's decision became the final decision of the Commissioner on December 11, 2024, when the Appeals Council denied Plaintiff's request for review.  (AR 6–11.)  This timely civil action followed.

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process under 20 C.F.R. § 416.920(a).  (AR 23.)  The ALJ also considered Plaintiff's substance use disorder pursuant to 20 C.F.R. § 416.935.  (AR 24.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 25, 2021, the application date.  (AR 24.)

At step two, the ALJ found that Plaintiff has the following severe impairments: generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), neurocognitive impairment, depression, chronic venous insufficiency, obesity, alcohol use disorder, and marijuana use disorder.  (AR 24.)

///

At step three, the ALJ found that with the inclusion of Plaintiff's substance use, the severity of his claimed mental impairments meets the criteria of section 12.06 of the Commissioner's Listing of Impairments.  (AR 25.)  The ALJ then determined that if Plaintiff stopped his substance use, the remaining limitations would still cause more than a minimal impact on his ability to perform basic work activities; therefore, Plaintiff would have a severe impairment or combination of impairments under 20 C.F.R. § 416.922. (AR 26–27.)  However, the ALJ further found that if Plaintiff stopped the substance use, he would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 27–29.)[1]

Next, the ALJ determined that, if Plaintiff stopped the substance use, he had the residual functional capacity ("RFC") "to perform light work" with the following limitations:

---

[1] Pursuant to the Social Security Act, if the Social Security Administration ("SSA") finds that a claimant is disabled and has medical evidence of his drug addiction or alcoholism, it "must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability[.]" 20 C.F.R. § 416.935(a); *see also* SSR 13-2P, 2013 WL 621536, at *4 (Feb. 20, 2013).  The "key factor" the SSA will examine "in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [the SSA] would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1).  "In making this determination, [the SSA] will evaluate which of [the claimant's] current physical and mental limitations, upon which [the SSA] based [its] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." *Id.* § 416.935(b)(2).  If the SSA determines that the claimant's "remaining limitations would not be disabling, [it] will find that [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability."  *Id.* § 416.935(b)(3). However, if the SSA determines that the claimant's "remaining limitations are disabling, [the claimant is] disabled independent of [his] drug addiction or alcoholism and [the SSA] will find that [the claimant's] drug addiction or alcoholism is not a contributing factor material to the determination of disability." *Id.* § 416.935(b)(4).

25-cv-00036-JLB

frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; understand, remember, and carry out simple, routine, repetitive tasks, with breaks every two hours; no interaction with the general public; occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or handoff of product. Cannot perform highly time pressured tasks such that the claimant is limited to generally goal-oriented work, not time sensitive strict production quotas (i.e., production rate pace work with strict by the minute or by the hour production quotas that are frequently and/or constantly monitored by supervisors or that are fast paced); low-stress environment where there are few work place changes (i.e., the claimant would not have to switch from task to task) and the claimant has minimal decision-making capability (i.e., he would be unable to exercise substantial discretion in carrying out work activities).

(AR 29.)

For purposes of his step four determination, the ALJ determined that Plaintiff has no past relevant work. (AR 34.)

At step five, based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC, if he stopped the substance use, could perform the requirements of occupations that existed in significant numbers in the national economy (*e.g.*, inspector, hand packager, and sub-assembler), the ALJ found that Plaintiff was not disabled under the law from the application date, through the date of decision. (AR 34–35.)

## III. PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's merits brief, the disputed issues that Plaintiff is raising as the grounds for reversal and remand are as follows:

1. The ALJ failed to properly evaluate the medical opinions of Dr Fabiola Del Aguila ("Dr. Aguila"), Plaintiff's treating psychologist, and Arthur Roehr, DNP, PMHNP-BC ("DNP Roehr"), another one Plaintiff's treating providers. (ECF No. 16 at 7–14.)

2. The ALJ failed to state clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. (*Id.* at 15–22.)

25-cv-00036-JLB

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## V.    DISCUSSION

### A.    The ALJ Erred in Assessing the Medical Opinions of Dr. Aguila and DNP Roehr.

#### 1.    Parties' Arguments

Plaintiff argues that the ALJ erred in assessing the medical opinions of Dr. Aguila and DNP Roehr. (ECF No. 16 at 7–14.) Plaintiff argues that both Dr. Aguila and DNP Roehr expressed their medical opinions during periods of sustained sobriety and specifically noted a lack of current drug and alcohol use. (*Id.* at 14.) Plaintiff argues that the "ALJ may not cherry-pick the record to support a finding of medical improvement with abstinence" from substance abuse. (*Id.*) Plaintiff requests that the court "credit the medical opinions of Dr. Aguila and DNP Roehr and award benefits." (*Id.*) In the alternative, Plaintiff requests reversal and remand for further proceedings. (*Id.*)

The Commissioner argues that the ALJ properly evaluated opinions from Dr. Aguila and DNP Roehr "in light of the evidence showing that in the absence of substance use, Plaintiff experienced significant improvement in mood and functioning." (ECF No. 17 at

7.)  The Commissioner further argues that "the ALJ did address the extent to which the opinions attached themselves to periods of abstinence from alcohol." (*Id.* at 8.)  The ALJ noted that the opinion from DNP Roehr stated that "substance abuse contributed to the limitations set forth in his opinion[s]." (*Id.* at 7.)  The Commissioner argues that although Plaintiff suggests an alternative interpretation of the record, the ALJ's interpretation was reasonable and entitled to deference. (*Id.* at 8–9.)

### 2.    Relevant Facts

Dr. Aguila treated Plaintiff for the first time on September 22, 2015.  (AR 1734–35.)  Dr. Aguila noted that "it was apparent that [Plaintiff] has been experiencing chronic anxiety since he was a child." (AR 1734.)  Plaintiff self-treated his anxiety for twenty years with marijuana but stopped in 2012 because he no longer wanted to depend on it.  (AR 1734.)  Since he quit, he has "been more anxious and has been noticing a lack of concentration, forgetting conversations, his OCD has increased, he doubts himself and then worries because he feels guilty about things he says or doesn't say." (AR 1734.)  Plaintiff reported averaging only three hours of sleep at night and feeling tired most of the day.  (AR 1734.)  During this visit, Dr. Aguila diagnosed Plaintiff with generalized anxiety disorder, and discussed treatment options.  (AR 1734.)  Plaintiff later resumed smoking marijuana to help with his insomnia.  (*See* AR 1290, 1629, 1946.)

Plaintiff started drinking alcohol at age 14 and his usage increased to daily around age 40.  (AR 1657.)  He would drink seven 24 oz cans of beer per day.  (AR 1657.)  Plaintiff attempted to get sober for the first time after his dad died in or around April 2021.  (AR 1652, 1660.)  He briefly relapsed in July and October 2021.  (AR 1621, 1629, 1637, 1641.)

Dr. Aguila continued to treat Plaintiff through 2023,[2] noting symptoms of anxiety, depression, PTSD, memory loss, irritability, hypervigilance, and insomnia.  (*See* AR 1733,

---

[2]    The AR only includes treatment notes from Dr. Aguila for two visits in 2015 and then jumps to June 2021.  Therefore, there are no treatment notes in the record for Dr. Aguila from November 2015 through May 2021.

1651, 1641, 1636, 1633, 1628, 1623, 1620.) Dr. Aguila administered two PHQ-9 screening evaluations for depression to Plaintiff on April 11, 2023, and July 5, 2023, on which Plaintiff scored a 22 (fail) and an 8 (pass), respectively. (AR 1517, 1499.) Throughout their sessions, Dr. Aguila noted that Plaintiff's symptoms would vacillate from getting worse, to getting better, and back. (*See, e.g.*, AR 1633 (10/4/21 "patient presented with despondent mood"); 1498 (7/3/23 "patient presented with an overall stable mood."); 1492 (9/25/23 "patient presented with hypervigilant mood").)

On February 2, 2022, Dr. Aguila completed a Short-Form Evaluation for Mental Disorders. (AR 915–19.) Dr. Aguila noted that he saw Plaintiff every month, with the most recent visit being the day before the form was completed. (AR 915.) Dr. Aguila's principal diagnosis of Plaintiff was PTSD. (AR 915.) Dr. Aguila opined that Plaintiff's concentration was slightly distracted, and his memory impairment was mild. (AR 916.) Dr. Aguila stated that Plaintiff had no current alcohol or illicit drug use. (AR 917.) In narrative form, Dr. Aguila stated: "[Plaintiff] is consistent with sessions and is cooperative. He's become more engaged in sessions, but progress is minimal. Prognosis is fair – [Plaintiff] is not as active in behavioral changes and this may be due to mood dysregulation and influence of past trauma." (AR 917.) Dr. Aguila opined that Plaintiff's ability to understand, remember, and carry out simple and complex instructions is fair. (AR 918.) However, he opined that Plaintiff had poor ability to maintain concentration, attention and persistence, to perform activities within a schedule and maintain regular attendance, to complete a normal workday and workweek without interruptions from psychologically-based symptoms, to respond appropriately to changes in a work setting, and to interact appropriately with the public, supervisors, and co-workers. (AR 918.)

DNP Roehr began treating Plaintiff on April 5, 2021, and saw him monthly. (AR 1281.) On June 20, 2022, DNP Roehr completed a "Short-Form Evaluation for Mental Disorders." (AR 1280–86.) DNP Roehr noted that Plaintiff had not used alcohol or illicit drugs in the past year, stating: "[Plaintiff] has maintained sobriety since approx. 06/16/2021," i.e., most of the time DNP Roehr had been treating Plaintiff. (AR 1283.)

7

DNP Roehr opined that Plaintiff had poor ability to understand, remember, and carry out simple and complex instructions, to maintain concentration, attention and persistence, to perform activities within a schedule and maintain regular attendance, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to respond appropriately to changes in a work setting, and to interact appropriately with the public, supervisors, and co-workers. (AR 1284.) DNP Roehr also opined that Plaintiff had severely impaired concentration and severely impaired recent memory. (AR 1282.)

Approximately a year and a half later, on November 17, 2023, DNP Roehr completed another medical opinion, a Mental Residual Functional Capacity Questionnaire for Plaintiff. (AR 1299–1304.) DNP Roehr reported seeing Plaintiff every one to three months. (AR 1300.) DNP Roehr assessed Plaintiff as unable to meet competitive standards in all mental abilities and aptitudes needed to do unskilled work. (AR 1302.) DNP Roehr described Plaintiff as having chronic PTSD and depression with limited coping skills and limited insight into his symptoms and self-regulation. (AR 1303.) DNP Roehr noted that Plaintiff's thought process is "fairly concrete with poverty of content" and he is easily overwhelmed. (AR 1300.) He added that Plaintiff has "severely limited recall and has chronic insomnia with a range of 3 hrs each night at best." (AR 1300.) Plaintiff also is not independently functional and is heavily dependent on his girlfriend. (AR 1304.) DNP Roehr reported that Plaintiff was "currently totally abstinent for a long term sustained period," however he checked the box indicating that Plaintiff's alcohol or substance abuse contributed to Plaintiff's limitations. (AR 1304.) Immediately below that, DNP Roehr explained that although "[n]ow sober, [the] severity of alcohol use history likely significantly contributed to Neurocognitive impairment." (AR 1304.) DNP Roehr assessed Plaintiff has having a "guarded" prognosis. (AR 1300.)

### 3. Applicable Law

Under the revised regulations which apply to claims, such as this one, filed on or after March 27, 2017, an ALJ must evaluate the persuasiveness of all medical opinions in the record and articulate in the decision his or her assessment as to each. *See* 20 C.F.R. §§

404.1520c(b), 416.920c(b).  In evaluating the persuasiveness of a medical opinion, an ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, purpose, and extent of the treatment relationship, frequency of examinations, and examining relationship; (4) specialization; and (5) any other factors that tend to support or contradict the medical opinion, including familiarity with the other evidence in the claim.  *See id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). Although an ALJ must consider all these factors, the only factors that the ALJ is required to discuss in his or her opinion are supportability and consistency, unless two conflicting medical opinions are both equally well-supported and consistent with the record.  *See id.* §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

In evaluating the persuasiveness of medical opinions, the "most important factors" are "supportability" and "consistency."  *See id.* §§ 404.1520c(a), 416.920c(a); *see also Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  An ALJ must "articulate . . . how persuasive" he or she finds "all of the medical opinions" from each doctor or other source, and "explain how [her or she] considered the supportability and consistency factors" in reaching these findings.  *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

///

///

///

///

25-cv-00036-JLB

4.   Analysis

In addressing the medical opinions of Dr. Aguila and DNP Roehr, the ALJ stated the following:

> The undersigned considered the opinions of Dr. Fabiola Del Aguila (Exhibit 12F) and Dr. Arthur Roehr (Exhibits 17F, 20F), which reflect similar limitations.  Notably, they both assessed a rating of "poor" in numerous mental functioning areas, including being able to understand, remember, and carry out simple instructions.  To the extent that these limitations take into account the claimant's substance use, which Dr. Roehr appeared to have done so in Exhibit 20F (marking "yes" to the question of whether substance abuse contributed to the limitations set forth), the undersigned finds them persuasive.  They would be supported by the cited evidence (e.g., easily overwhelmed, poor insight, tearfulness, and history of PTSD) as well as consistent with the evidence as a whole, as discussed under Finding 3, which reveals significant mental symptomatology, such as irritability, sleep disturbance, and difficulty concentrating during periods of substance use, in particular, alcohol consumption (Exhibits 6F/9, 11; 11F/29, 30, 36; 24F/172, 182, 191, 192).  However, to the extent that these limitations pertain to the claimant during periods of sobriety, the undersigned would find them unpersuasive, as they would be inconsistent with the evidence showing that in the absence of substance use, the claimant experiences notable improvement in mood and functioning.  They would also be consistent with the evidence revealing no more than prescription medications and some psychotherapy sessions for the claimant's mental health treatment (Exhibits 8F, 13F, 15F, 16F, 18F, 24F, 25F).

(AR 33.)

The ALJ discussed both the supportability and consistency factors in evaluating the medical opinions.  However, Plaintiff argues that the ALJ's assessment is not supported by substantial evidence.  (*See* ECF Nos. 16 at 10–14; 18 at 4.)  Specifically, Plaintiff argues that the ALJ failed to address that "[a]t the times of DNP Roehr's medical opinions, [Plaintiff] had maintained his sobriety, other than a two-day relapse in August 2021, for approximately 10 months and 27 months, respectively."  (ECF No. 16 at 10.)  Plaintiff further argues that the ALJ failed to address that "[a]t the time of Dr. Aguila's medical

opinion, [Plaintiff] had maintained his sobriety since July 2021, other than a two-day relapse in August 2021, for approximately seven months." (*Id.*)

Plaintiff further argues that the ALJ's finding that Plaintiff "experienced significant improvement in mood and functioning" during periods of sobriety lacks the support of substantial evidence. (ECF No. 18 at 4.) Plaintiff argues that the ALJ "may not cherry-pick the record to support a finding of medical improvement with abstinence." (ECF No. 16 at 14.) The Court agrees that the ALJ improperly cherry-picked the record in finding that Plaintiff's experienced notable improvement in mood and functioning after obtaining sobriety. (*See* AR 33.) The Court has reviewed the record and does not find any material difference in DNP Roehr's and Dr. Aguila's treatment notes during Plaintiff's long periods of sobriety and during his short relapses in 2021.

Throughout the record, Plaintiff reports having difficulty sleeping much more than two to three hours per night. (*See, e.g.*, AR 875–77, 939, 1480, 1485, 1489, 1508, 1524, 1528, 1531, 1535, 1542, 1546, 1554, 1557, 1575.) Although Kelley De Leeuw, MD stated in October 2021 that "ongoing high anxiety and insomnia" is "common in early sobriety," Plaintiff continued to experience these symptoms throughout 2022 and 2023. (*See id.*) The ALJ identifies no reports of alcohol use between October 2021 and February 2024, yet Plaintiff's sleep and anxiety did not improve. (*See* AR 26, 31–32.) In early 2023, Plaintiff underwent a sleep study and was diagnosed with sleep apnea, but despite ongoing treatment, he continued to experience severe sleep difficulties although he tried multiple medications. (*See* AR 1480, 1485, 1489, 1516.) In November 2023, Plaintiff reported that he was "still having the same stuff with the sleeping." (AR 1489.) He stated that he "took Suvoraxant for 3 days and didn't sleep those days at all. Eszopiclone is working better, some days it doesn't work, sometimes takes Hydroxyzine but he is drowsy the whole next day." (AR 1489.) In December 2023, Plaintiff reported that the "Suvorexant caused scattered sleep and he slept really light and had a headache every day. Is back on the eszopiclone and readjusting. Sleep is like 2–3 hours and he will wake up." (AR 1480.) ///

25-cv-00036-JLB

Dr. Aguila attributed Plaintiff's low frustration tolerance and irritability to his inability to sleep on multiple occasions. (*See* AR 1535, 1531, 1495.) Plaintiff's low frustration tolerance leads to him experiencing anxiety and becoming highly irritable. (AR 1495; *see also* AR 1642.) In August 2023, Dr. Aguila also suggested that Plaintiff's low frustration tolerance may be related to past drug use or a traumatic brain injury ("TBI"). (AR 1495.) In late 2023, Plaintiff reported an increase in irritability and hypervigilance. (AR 1485, 1492.) In September and November 2023, Dr. Aguila assessed Plaintiff's hyperarousal as "due to PTSD and possibly TBI." (AR 1485, 1492.) He also noted that it "may be related to his past traumatic experience[s], his TBI, or his past alcohol use." (AR 1492.) Therefore, Dr. Aguila acknowledged Plaintiff's past drug and alcohol abuse, but indicated that other impairments may be contributing to Plaintiff's symptoms.

In June 2021, Plaintiff reported "very poor memory," which he deemed longstanding and which he attributed to an aneurysm in his twenties. (AR 463; *see also* AR 1733, 1743, 1826.)[3] Plaintiff continued to report memory issues in 2022 and 2023 despite being sober. (*See* AR 1575, 1586, 1595, 1608.) In June 2022, DNP Roehr opined that Plaintiff had severe recent memory impairment. (AR 1282.) This is in line with the Psychological Evaluation done by J. Durr, Ph.D. in August 2022 in which Dr. Durr opined that Plaintiff's auditory, visual, and visual working memory was in the extremely low range, although he felt this was an underrepresentation of Plaintiff's ability. (AR 1290–92.) In his November 2023 opinion, DNP Roehr further noted that Plaintiff's thought process was "fairly concrete with poverty of content" and Plaintiff replies, "I don't know" and "I can't remember" to most questions "which will often trigger an affective response with trembling and crying." (AR 1300.) DNP Roehr stated that Plaintiff is easily overwhelmed,

---

[3] Plaintiff's treatment notes indicate major neurocognitive disorder, noting that he tested "at level of severe dementia 18/30 on MOCA" in June 2021. (AR 456, 866.) The following line posits the question whether his differential diagnoses are "due to aneurism [history] vs. alcohol induced." (AR 866.)

has poor insight into his mental health condition, and has "severely limited recall and has chronic insomnia with a range of 3 hrs each night at best." (AR 1300.) In DNP Roehr's treatment notes, these symptoms are not limited to 2021 or periods of alcohol use.

Overall, the Court does not find substantial evidence in the record to support the ALJ's statement that the evidence shows "that in the absence of substance use, [Plaintiff] experiences notable improvement in mood and functioning." (AR 33.)[4] Accordingly, the Court finds that the ALJ erred in assessing the medical opinions of Dr. Aguila and DNP Roehr.

**B.     The ALJ Erred in Assessing Plaintiff's Subjective Symptom Testimony**

**1.     Parties' Arguments**

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. (ECF No. 16 at 15–22.) The Commissioner argues in response that the ALJ reasonably discounted Plaintiff's testimony, arguing that "Plaintiff's summary of medical evidence and arguments about the ALJ's subjective symptom analysis are simply an alternative interpretation of the record." (ECF No. 17 at 3–6.)

**2.     Applicable Law**

In deciding whether to accept a claimant's subjective symptom testimony, the ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is

---

[4]     Regardless, as stated in SSR 13-2P, "[i]f . . . a claimant is abstinent and remains disabled throughout a continuous period of at least 12 months, [drug addiction and alcoholism] is not material even if the claimant's impairment(s) is gradually improving." SSR 13-2P, 2013 WL 621536, at *12 n.26 (Feb. 20, 2013).

13

met and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter*, 504 F.3d at 1036). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *Burrell v. Colvin*, 775 F.3d 1133, 1138–39 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony").

The ALJ is responsible for "determin[ing] credibility, resolv[ing] conflicts in the testimony, and resolv[ing] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) (directing that the Commissioner's "findings . . . as to any fact, if supported by substantial evidence, shall be conclusive"). In assessing a claimant's credibility, the ALJ may consider, *inter alia*, (1) inconsistencies in the claimant's testimony or between her testimony and her conduct; (2) the claimant's daily living activities; (3) the claimant's work record; and (4) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's

25-cv-00036-JLB

condition. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002)[5]; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (listing factors).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to engage in second-guessing. *See Thomas*, 278 F.3d at 959 (citation omitted); *see also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). However, "[i]f the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] [its] conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1103). Because reviewing courts "cannot engage in such substitution or speculation, such error will usually not be harmless." *Id.* But the ALJ's reliance on other possibly erroneous credibility findings is harmless if the ALJ's conclusion on credibility is supported by other substantial evidence. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008).

### 3. ALJ's Opinion

The ALJ summarized Plaintiff's symptom testimony as follows:

> The claimant alleges an inability to work as a result of both physical and mental impairments (Exhibit 2E). Function reports completed by the claimant and his friend, Carrie Whaley, indicate problems with anxiety, depression, and insomnia. The claimant reportedly has difficulty with social functioning; he does not like to be around other people. The claimant also reportedly has

---

[5] The Court in *Thomas* also included the claimant's reputation for truthfulness as a consideration, but the SSA has since clarified that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); *accord Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017).

25-cv-00036-JLB

problems with memory, understanding, following instructions, and getting along with others. (AR 23.)

The claimant's activities of daily living are noted to include watching television, performing household chores (e.g., washing dishes, sweeping, preparing daily meals, mopping, and shopping in stores for food). He is able to count change and handle a savings account, but he does not pay bills or use a checkbook/money order (Exhibits 3E, 4E).

At the hearing, the claimant testified that he is unable to work because of insomnia; sometimes he goes 4 days without sleeping. He experiences memory problems while unable to remember things. He feels bad anxiety at night; sometimes he gets scared and panicky. The claimant receives counseling without doctors ever hospitalizing him for mental health issues. He last drank alcohol a year ago and last smoked marijuana two months ago. He stopped smoking marijuana because it was giving him anxiety and panic attacks. The claimant does not go out and does not have friends. He has arthritis and experiences pain in his back. He is only able to walk for 2 hours. He is able to sit until he has to get up to stretch. He lays on the floor to alleviate his pain. He further testified to having completed a 10th grade education and having gone to trade school for welding. He testified to doing chores at home (e.g., washing dishes, vacuuming, and keeping his living area clean) (Hearing Testimony).

(AR 29–30.)

In assessing Plaintiff's subjective symptom testimony, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 30.) However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 30.) The ALJ provided the following reasons for rejecting the severity of Plaintiff's symptom testimony: (1) inconsistency with Plaintiff's self-reported activities of daily living; and (2) improved mental functioning in the absence of substance use. (AR 32.) The Court will address each reason below.

///

///

25-cv-00036-JLB

4.      Analysis

a.      *Physical Condition: Daily Activities*

First, the ALJ discounted Plaintiff's subjective physical symptom testimony by pointing to Plaintiff's "self-reported activities of daily living," which the ALJ found "compatible with the ability to sustain the work activities within the confines of the residual functional capacity." (AR 32.)  The ALJ noted that "despite [Plaintiff's] allegations related to his physical condition, the record reflects the ability to engage in regular exercise, such as biking, lifting weights, walking, and using the treadmill." (AR 32 (citing Ex. 24F/39, 55).)  The ALJ concluded that the "evidence does not suggest the claimant is as physically limited as he has alleged." (AR 32.)

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165; *see also Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("[I]nconsistent daily activities may provide a justification for rejecting symptom testimony[.]"); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (stating that a contradiction between a claimant's daily activities and his or her testimony is a ground for forming the basis of an adverse credibility determination).  In other words, a court may consider inconsistencies between a claimant's words and her actions. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").  However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  A claimant "does not need to be utterly incapacitated in order to be disabled." *Id.* (internal quotation marks and citation omitted).

Daily activities may also "be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance

25-cv-00036-JLB

of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). To meet this standard, the ALJ "must make 'specific findings relating to [the daily] activities' and their transferability [to a work setting] to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ cited records indicating that Plaintiff was able to "engage in regular exercise, such as biking, lifting weights, walking, and using the treadmill" to show that Plaintiff's daily activities were incompatible with the severity of Plaintiff's alleged physical symptom testimony. (AR 32 (citing Ex. 24F/39, 55).) The first record cited by the ALJ is from a March 9, 2023 visit with Plaintiff's mental health provider in which Plaintiff self-reported that he had "been trying to exercise to see if [it] will get him tired, lifting some weights and doing some tread mill." (AR 1524.) In the same record, Plaintiff noted that he was "exercising every day." (AR 1524.) The second record cited by the ALJ is from a June 15, 2023 visit with Plaintiff's mental health provider in which Plaintiff self-reported that he had "been riding his bike and trying to exercise, having some back pain, got a new bike that he was tuning up, got a mountain bike that he is enjoying." (AR 1508.)

Based on the cited notations and a review of the record, the Court finds that this was a clear and convincing reason supported by substantial evidence for rejecting the severity of Plaintiff's subjective physical symptom testimony.[6]

b.    *Mental Condition: Improved Mental Functioning*

*in the Absence of Substance Use*

Second, the ALJ discounted Plaintiff's subjective mental symptom testimony because Plaintiff "has improved mental functioning in the absence of substance use." (AR 32.) In this regard, the ALJ noted that Plaintiff appears "capable of managing personal care, preparing daily meals, doing household chores (e.g., washing dishes, vacuuming,

---

[6]    The Court notes that Plaintiff does not challenge the sufficiency of this particular reason.

25-cv-00036-JLB

sweeping, and mopping), shopping in stores, counting change, handling a savings account, and watching television." (AR 32 (citing Exs. 3E, 4E, 18F).)

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (stating that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). However, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). "They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* "Caution in making such an inference is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work." *Id.* at 1017–18.

In support of this reason, the ALJ cited the Function Reports submitted by Plaintiff and his friend Carrie Whaley, both dated August 24, 2021. (AR 32 (citing Exs. 3E, 4E).) The ALJ also cited the August 4, 2022 Psychological Evaluation done by J. Durr, Ph.D. (AR 32 (citing Ex. 18F).) Each of these reports indicated that Plaintiff was mostly independent in his activities of daily living.

In 2021, Plaintiff stated that although he can feed himself frozen and canned food prepared in the microwave and independently use the toilet, he does not care for his hair and needs to be reminded to shower. (AR 325–26.) He also sometimes sweeps, washes dishes, and mops, but needs help to finish. (AR 326.) He stated that he can count change and handle a savings account, but he does not use a checkbook or pay bills because he has

never done it.  (AR 327.)  Plaintiff also reported that he does shop in stores for about eight minutes every month.  (AR 327.)  Plaintiff's friend, Ms. Whaley, supported Plaintiff's statements.  (AR 313–20.)  Plaintiff also reported to Dr. Durr in 2022 that he was "independent in activities of daily living, including dressing, bathing, making simple meals, doing household chores, and shopping."  (AR 1290.)  Plaintiff further reported to Dr. Durr that although he has a driver's license, he does not drive, and his typical day consists of watching television and dozing.  (AR 1290.)

Here, the Court finds that the ALJ's general statement that Plaintiff "has improved mental functioning in the absence of substance use" does not meet the specific, clear and convincing standard.  The ALJ did not identify which of Plaintiff's subjective statements regarding his mental health symptoms he did not find credible and point to specific evidence in the record undermining Plaintiff's complaints.  *See Brown-Hunter*, 806 F.3d at 493; *Holohan*, 246 F.3d at 1208.  An ALJ errs when he fails to do so.  *See Burrell*, 775 F.3d at 1139.  To the extent the ALJ is suggesting that Plaintiff's ability to be independent in his activities of daily living, in the manner he performs them, indicates an improvement in mental functioning in the absence of substance use, he fails to make the requisite connection to Plaintiff's symptom statements.

Accordingly, the Court finds that the ALJ erred in rejecting the severity of Plaintiff's symptom testimony with respect to his mental impairments.

## C.    Remand for Further Administrative Proceedings is Appropriate

Remand for further administrative proceedings, rather than an award of benefits, is warranted because further administrative review could remedy the ALJ's errors.  *See Brown-Hunter*, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances).  This is not a case where "further administrative proceedings would serve no useful purpose."  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  On remand, the ALJ shall properly review and evaluate the medical opinions of DNP Roehr and Dr. Aguila and Plaintiff's symptom testimony.

///

## VI.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's merits brief, reversing the decision of the Commissioner, and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated:  March 25, 2026

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge

25-cv-00036-JLB